# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DAVID GRAY, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) |
| | )   Case No. 6:25-cv-77-JAR |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Defendant. | ) |

### OPINION AND ORDER

Before the court is the motion to dismiss [Doc. 11]¹ filed on behalf of defendant United States of America pursuant to Fed. R. Civ. P. 12(b)(1). Plaintiff David Gray, proceeding *pro se*, timely responded in opposition [Doc. 15] and the United States filed a reply brief [Doc. 16].

## I.   PLAINTIFF'S ALLEGATIONS

This case arises under the Federal Tort Claims Act ("FTCA") and centers on plaintiff's claim that the United States, acting through the Federal Crop Insurance Corporation ("FCIC") and its 2020 Board of Directors, negligently disrupted a private commodities market in which plaintiff operated as a professional market maker.

From 2003 to 2022, plaintiff traded Chicago Mercantile Exchange ("CME") Feeder Cattle Index "put" options. [Doc. 2, ¶¶ 6-7, 33]. The CME Feeder Cattle Index is a daily average of feeder cattle prices collected from major cattle-producing regions in the United States. [*Id.*, ¶ 9]. According to plaintiff, a "put" option on the CME

---

¹ For clarity and consistency herein, when the court cites to the record, it uses the pagination and document numbers provided by CM/ECF.

1

Feeder Cattle Index is a "financial contract" that gives its holder the right (but not the obligation) to sell futures at a fixed price before the option expires. This type of option is essentially insurance that protects cattle producers from downside price movements in the CME market. [*Id.*, ¶ 10]. As a market maker, plaintiff facilitated market liquidity by continuously quoting put option buy and sell prices for CME "put" options, enabling cattle producers to efficiently execute trades. [*Id.*, ¶ 11].

Between July 1, 2020 and May 19, 2022, plaintiff purchased 4,325 CME Feeder Cattle Index "put" options at a total premium of $5,766,490.63. Plaintiff alleges these purchases occurred during a period in which, unbeknownst to him, the private market was destabilized by regulatory actions to the FCIC's Livestock Risk Protection ("LRP") pilot insurance program.[2] [*Id.*, ¶ 17]. He specifically challenges two changes approved by the FCIC Board of Directors in 2020: (1) allowing cattle producers to defer premium payments until after the coverage period ended, which plaintiff contends made LRP coverage cost-free to initiate; and (2) significantly increasing premium subsidies—ranging from 35% to 65%—depending on producer eligibility. These modifications took effect on July 1, 2020. [*Id.*, ¶¶ 14-15].

According to plaintiff, these changes distorted normal market behavior by incentivizing cattle producers to abandon CME "put" option trading in favor of subsidized LRP policies, thereby collapsing the two-sided flow essential to his

---

[2] The FCIC is responsible for administering federal crop insurance programs under the oversight of the USDA Risk Management Agency ("RMA"), including the LRP pilot program. [*Id.*, ¶ 13]. The LRP program provides federally subsidized insurance product that functions similarly to a "put" option on the CME Feeder Cattle Index, allowing cattle producers to hedge against price declines. LRP coverage is priced using data derived directly from the CME market, including settlement prices and implied volatility. Only cattle producers are eligible to purchase LRP policies. [*Id.*, ¶¶ 12, 24-25].

2

market-making function. As cattle producers increasingly exited the CME market, plaintiff claims he was left with one-sided exposure and an inability to offset risk. On May 20, 2022, he ceased all market-making activity and completed liquidation of his positions by November of that year. [*Id.*, ¶¶ 22, 26-30, 32-33].

Plaintiff asserts that the FCIC acted negligently by implementing changes that violated statutory and regulatory safeguards designed to prevent government interference in private markets. He further cites the emergence of "subsidy harvesting," whereby cattle producers allegedly purchased subsidized LRP policies while simultaneously selling CME "put" options to capture the subsidy while offsetting risk. [*Id.*, ¶¶ 29, 34-35].

Plaintiff seeks compensatory damages in the amount of $3,748,219, asserting claims for negligence and negligence *per se*. [*Id.* at 12-15]. He contends this figure represents the overpayment he made on CME "put" options during the period in which LRP premiums, reduced by subsidies and deferred payment terms, rendered CME market prices artificially uncompetitive. [*Id.*, ¶¶ 54-59].

## II.     DISMISSAL STANDARD

The United States seeks dismissal of this action pursuant to Fed. R. Civ. P. 12(b)(1) for a lack of subject matter jurisdiction. Dismissal under Rule 12(b)(1) is not a judgment on the merits, but only a determination that the court lacks authority to adjudicate the matter. *See* Casteneda v. INS, 23 F.3d 1576, 1580 (10th Cir. 1994) (recognizing federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so). A court lacking jurisdiction "must

dismiss the cause at any stage of the proceeding in which it becomes apparent that jurisdiction is lacking." Basso v. Utah Power & Light Co., 495 F.2d 906, 909 (10th Cir. 1974). A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere [conclusory] allegations of jurisdiction." Groundhog v. Keeler, 442 F.2d 674, 677 (10th Cir. 1971). The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. Basso, 495 F.2d at 909. As plaintiff proceeds *pro se*, the court construes his complaint liberally. *See* Gaines v. Stenseng, 292 F.3d 1222, 1224 (10th Cir. 2002).

Since the United States is a sovereign, plaintiff must also point to a statute which provides for a specific waiver of the United States' immunity. *See* Normandy Apts., Ltd. v. U.S. Dep't of Hous. & Urb. Dev., 554 F.3d 1290, 1295 (10th Cir. 2009). Absent a waiver, sovereign immunity shields the federal government and its agencies from suit. FDIC v. Meyer, 510 U.S. 471, 475 (1994) (citations omitted). Sovereign immunity is jurisdictional in nature, as the "terms of [the United States'] consent to be sued in any court define that court's jurisdiction to entertain the suit." United States v. Sherwood, 312 U.S. 584, 586 (1941); *see also* United States v. Mitchell, 463 U.S. 206, 212 (1983) ("It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction."). A waiver of sovereign immunity is to be strictly construed, in terms of its scope, in favor the sovereign. *See e.g.,* Lane v. Pena, 518 U.S. 187, 192 (1996). Here, plaintiff invokes the FTCA as a purported waiver of the United States' sovereign immunity.

4

### III. DISCUSSION

In support of its Rule 12(b)(1) dismissal motion, the United Sates asserts the following arguments: (1) plaintiff's FTCA claims are based on "interference with contract rights" and, thus, are barred by 28 U.S.C. § 2680(h); (2) the FTCA claims are also barred by the "discretionary function jurisdictional exception" under 28 U.S.C. § 2680(a); (3) plaintiff has failed to establish an appropriate private party analogue for his negligence claim; and (4) his claim for negligence *per se* fails because the FCIC and its LRP pilot program are not subject to the jurisdiction of the Commodity Futures Trading Commission, and the violation of a federal statute or regulation cannot be the basis for liability under the FTCA.

#### A. PLAINTIFF'S FTCA CLAIMS BASED ON "INTERFERENCE WITH CONTRACT RIGHTS" ARE BARRED BY 28 U.S.C. § 2680(H).

The FTCA "was designed primarily to remove the sovereign immunity of the United States from suits in tort." Levin v. United States, 568 U.S. 503, 506 (2013). The Act gives federal district courts exclusive jurisdiction over claims against the United States for "injury or loss of property or personal injury or death caused by negligent or wrongful act or omission" of a federal employee "acting within the scope of his office or employment." 28 U.S.C. § 1346(b)(1). This broad waiver of sovereign immunity is subject to a number of exceptions set forth in § 2680 of the FTCA, including "[a]ny claim arising out of … interference with contract rights." Id. § 2680(h). Whether a claim falls within § 2680(h) turns on the conduct alleged, not the legal theory invoked. Hall v. United States, 274 F.2d 69, 71 (10th Cir. 1959); *cf.* United States v. Neustadt, 366 U.S. 696, 703 (1961). Thus, a plaintiff cannot avoid

the exception by recasting an interference-with-contract-rights claim as a claim for negligence. *See* United States v. Shearer, 473 U.S. 52, 55 (1985).

The United States contends that plaintiff's negligence claims are essentially claims for interference with contract rights and are therefore barred by § 2680(h). Plaintiff responsively asserts that § 2680(h) applies solely to "intentional torts," and because his complaint alleges "FCIC negligence" rather than "any deliberate or malicious act," the statute does not foreclose his claims. [Doc. 15 at 2-3, ¶¶ 4, 6]. While the complaint acknowledges that "[a] 'put' option on the CME Feeder Cattle Index is a financial contract" [Doc. 2, ¶ 10], plaintiff maintains that his damages derive from "measurable overpayment for CME 'put' options caused by FCIC's alleged negligence—not from interference with any enforceable contract." [Doc. 15 at 3, ¶ 5].

In support, plaintiff relies on the assertion that "[t]he Supreme Court's language is clear, § 2680(h) is an intentional tort exception." [*Id*. at 3, ¶ 6 (*citing* Millbrook v. United States, 569 U.S. 50, 52 (2013))]. This argument misreads the statute and precedent. *Millbrook* did not address the interference-with-contractual-right exception or impose an intent requirement on § 2680(h) as a whole. Rather, the Supreme Court considered the scope of § 2680(h)'s "law enforcement proviso" and made no pronouncement about the mental state required for other exceptions under the statute. Millbrook, 569 U.S. at 53.

The Supreme Court has long rejected the notion that § 2680(h)'s exceptions apply only to intentional acts. The "arising out of" language in § 2680 of the FTCA encompasses negligence claims *if* the underlying conduct fits within an enumerated

6

exception. *See* Neustadt, 366 U.S. at 702 (finding § 2680(h)'s exception for claims arising out of "misrepresentation" covers cases in which negligence underlies the alleged inaccurate representation); *see also* Shearer, 473 U.S. at 55-56 (finding § 2680(h)'s exception for claims arising out of "battery" includes claims "that sound in negligence but stem from a battery committed by a Government employee."). The Tenth Circuit has likewise applied this principle to interference-with-contract-rights claims, holding them barred whether premised on negligent or intentional conduct. *See* Cooper v. Am. Auto. Ins. Co., 978 F.2d 602, 611, 613 (10th Cir. 1992) (finding claims against the government based on tortious interference with present or future contractual relations are barred by § 2680(h)); *see all* United States v. Ken Mar Assocs. Ltd., 697 F. Supp. 400, 403 (W.D. Oka. Oct. 27, 1987) (*citing* Dupree v. United States, 264 F.2d 140 (3rd Cir. 1959) ("Section 2680(h) excludes invocation of the relief granted under the [FTCA] and 28 U.S.C. § 1346(b) in instances where there is interference, negligent or otherwise, by a government employee or officer with contractual rights of an aggrieved individual).

The same principle applies here. Plaintiff's own allegations show that his damages flow from the FCIC's conduct affecting the value of "put" options which, by his own description, are financial contracts. *See e.g.*, [Doc. 2, ¶¶ 4, 6, 53, 54]. Whether the alleged interference was intentional or negligent, § 2680(h) of the FTCA bars plaintiff's negligence claims. The United States is therefore entitled to dismissal of this FTCA case pursuant to Rule 12(b)(1).

7

B.  **PLAINTIFF'S FTCA CLAIMS ARE BARRED BY THE "DISCRETIONARY FUNCTION EXCEPTION."**

The FTCA does no waive sovereign immunity for "[a]ny claim" arising from "the exercise of performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency." 28 U.S.C. § 2680(a). As the Supreme Court has explained, this exception "marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals." Berkovitz v. United States, 486 U.S. 531, 536 (1988) (*quoting* United States v. Varig Airlines, 467 U.S. 797, 808 (1984)). Because the discretionary function exception is jurisdictional, the burden is on plaintiff to prove it does not apply. Hardscrabble Ranch, LLC v. United States, 840 F.3d 1216, 1222 (10th Cir. 2016); *see also* 28 U.S.C. § 1346(b)(1).

Courts determine applicability using the two-pronged framework established in *Berkovitz*. Elder v. United States, 312 F.3d 1172, 1176 (10th Cir. 2002) (*citing* Berkovitz, 486 U.S. at 536). First, the court considers whether the challenged conduct "involves an element of judgment or choice" or whether a federal statute, regulation, or policy "specifically prescribes a course of action for an employee to follow," in which case the exception does not apply. Berkovitz, 486 U.S. at 536. If judgment or choice exists, the court proceeds to determine whether that judgment "is the kind that the discretionary function exception was designed to shield." Id. The exception protects only those discretionary actions or decisions which are "based on considerations of public policy." Id. at 537.

8

### 1. *Berkovitz* First Prong

To satisfy the first prong, plaintiff must identify a "specific and mandatory" directive leaving no room for discretion. Kiehn v. United States, 984 F.2d 1100, 1102 (10th Cir. 1993); Aragon v. United States, 146 F.3d 819, 823 (10th Cir. 1998). Plaintiff relies on various statutory provisions in the Federal Crop Insurance Act ("FCIA") and purported agency guidelines to argue that the FCIC lacked discretion in approving the July 2020 modifications to the LRP pilot program.

#### i. *Federal Statutes Invoked by Plaintiff*

Plaintiff specifically contends the challenged conduct violated § 508(i) of the FCIA, which he asserts is codified at 7 U.S.C. §§ 1523(a)(2) and (b)(7). [Doc. 15 at 33-34, ¶¶ 97-98]. Section 508(i) is codified at 7 U.S.C. § 1508(i), however, and addresses only the FCIC's adoption of "rates and coverages that will improve the actuarial soundness of the insurance operations" of the agency. 7 U.S.C. § 1508(i)(1). To the extent plaintiff intended to invoke §§ 523(a)(2) and (b)(7) of the FCIA, codified at 7 U.S.C. §§ 1523(a) and (b), these subsections provide in pertinent part:

> (2) PRIVATE COVERAGE—Under this section, the [FCIC] shall not conduct any pilot program that provides insurance protection against a risk if such protection is generally available from private companies.
>
> (b) LIVESTOCK PILOT PROGRAMS
>
> (5) RELATION TO OTHER LIMITATIONS—Any policy or plan of insurance under this subsection may be prepared *without regard to the limitation of this subchapter*.
>
> (7) PRIVATE INSURANCE—No action may be undertaken with respect to a risk under this subsection *if the [FCIC] determines* that insurance protection for livestock producers against the risk is generally available from private companies.

9

Id. §§ 1523(a)(2), (b)(5), (b)(7) (emphasis added).

Neither § 1523(a)(2) nor § 1523(b)(7) specifically govern FCIC's approval of the July 2020 LRP modifications. Because LRP is a livestock pilot program, it falls within § 1523(b), and subsection (b)(5) provides that "[a]ny policy or plans of insurance" offered under a livestock pilot program may be prepared "without regard to limitations" of Title 7, Ch. 36, Subchapter I of the United States Code (*i.e.*, 7 U.S.C. §§ 1501-1524). Id. § 1523(b)(5). Thus, the provisions of § 1523(b)(5) render the provisions of § 1523(a)(2) inapplicable to the FCIC's LRP pilot program. Moreover, nothing in § 1523(b)(7) specifically prescribes a course of action for an FCIC employee to follow. *See* Berkovitz, 486 U.S. at 536. Subsection (b)(7) is inherently discretionary, expressly giving the FCIC discretion to determine whether a given livestock risk—such as those addressed by the July 2020 changes—is already insured by private companies.

In sum, because § 1523(b)(7) gives FCIC discretion to determine the availability of private insurance, it necessarily involves judgment and choice, defeating plaintiff's attempt to remove the decision from the discretionary function exception. *See e.g.*, Elder, 312 F.3d at 1176-77; Hardscrabble Ranch, LLC, 840 F.3d at 1222; Berkovitz, 486 U.S. at 536. In making the determination to increase LRP pilot program subsidies and deferred premium due dates, the FCIC was well within the discretion it has been provided under § 1523(a)(1), which provides:

> (1) AUTHORITY—Except as otherwise provided in this section, the [FCIC] may, *at the sole discretion of the [FCIC]*, conduct a pilot program submitted to and approved by the Board under section 1508(h) of this title, or that is developed under subsection (b) … of this title, to evaluate

10

> whether a proposal or new risk management tool tested by the pilot program is suitable for the marketplace and addresses the needs of producers of agricultural commodities.

7 U.S.C. § 1523(a)(1) (emphasis added).

### ii. *Agency Guidelines Invoked by Plaintiff*

Plaintiff further claims the challenged conduct violated agency guidelines contained in a document titled "General Guidelines, Considerations, and Criteria for Feasibility of Insurance Product Development" (the "Guidelines"). [Doc. 15 at 15-18, ¶¶ 39-44]. The introductory section of the Guidelines provides in pertinent part:

> This document *provides general information that may be helpful to private entities* who are interested in developing crop insurance products for either crops or livestock. ... The [FCIA], Code of Federal Regulations (CFR), and Board Procedures cited at the end of this document are the official documents that provide the requirements for ultimately submitting a privately developed product and must be followed for any insurance products submitted to the [FCIC].

[*Id*. at 39 (emphasis added)]. Because the Guidelines are clearly advisory in nature, addressed to private parties, and do not bind FCIC employees, they do not constitute a "specific and mandatory" directive. *See* Elder, 312 F.3d at 1176-77; *see also* Hardscrabble Ranch, LLC, 840 F.3d at 1220 (*quoting* Berkovitz, 486 U.S. at 536) ("if a regulation or policy 'specifically prescribes a course of action for an employee to follow,' there would be no discretion for the employee: he would have no choice but to follow the directive, so the discretionary function exception would not apply."). Consequently, plaintiff fails to satisfy the first prong of the *Berkovitz* test.

### 2. *Berkovitz* Second Prong

Even if plaintiff could satisfy the first prong, the FCIC's decision to increase subsidies and extend premium due dates for the LRP pilot program reflects precisely

11

the type of policy-based judgment Congress intended to insulate from judicial review. Plaintiff does not respond to the government's showing that these program modifications involve multiple policy considerations. *See* [Doc. 11 at 10-11]. Such judgments inherently implicate economic, social and political factors, which are exactly the type of discretionary determinations the exception shields. *See e.g.,* Berkovitz, 486 U.S. at 536-37; Varig Airlines, 467 U.S. at 814; Duke v. Dep't of Agric., 131 F.3d 1407, 1411 (10th Cir. 1997). The court accordingly finds the discretionary function exception applies to plaintiff's FTCA claims, entitling the United States to dismissal under Rule 12(b)(1).

C. **PLAINTIFF FAILS TO ESTABLISH AN APPROPRIATE PRIVATE PARTY ANALOGUE TO SUPPORT HIS NEGLIGENCE CLAIM.**

A claim asserted under the FTCA is actionable only if it satisfies the following six elements:

> [T]he claim must be [1] against the United States, [2] for money damages, ... [3] for injury or loss of property, or personal injury or death [4] caused by the negligent or wrongful act or omission of any employee of the Government [5] while acting within the scope of his office or employment, [6] under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

Brownback v. King, 592 U.S. 209, 217 (2019) (*quoting* 28 U.S.C. § 1346(b)(1)). Thus, the United States cannot be liable unless state law recognizes comparable private liability. *See* 28 U.S.C. § 1346(b)(1).[3] Failure to identify an appropriate private-party

---

[3] *See also* United States v. Olson, 546 U.S. 43, 46 (2005) (explaining that the FTCA waives the federal government's sovereign immunity only where local law would make a private person liable in tort, not where local law would make a state or municipal entity liable, even where uniquely governmental functions are at issue); Hill v. SmithKline Beecham Corp., 393 F.3d 1111, 1117 (10th Cir. 2004) (citation omitted) (recognizing that "the United States is seldom situated identically to

12

analogue deprives the court of jurisdiction to hear those claims. *See* <u>Pappas v. United States</u>, 617 Fed. Appx. 879, 883 (10th Cir. 2015) (unpublished) (*citing* <u>Miller v. United States</u>, 710 F.2d 656, 662 (10th Cir. 1983)) (explaining that the party asserting jurisdiction "bears the burden of proof to establish that the court possesses subject matter jurisdiction based upon analogous Oklahoma private liability.").

Plaintiff asserts the FCIC is liable under the general elements of Oklahoma negligence law. [Doc. 15 at 21-26, ¶¶ 56-70]. He argues that "the FCIC operated within the same economic space" as him, "effectively competing in the same market" and because FCIC entered the same commercial space, "it owed a duty of care not to distort the CME Feeder Cattle Index market or cause foreseeable damage that harmed [p]laintiff." [*Id*. at 22-23, ¶¶ 60, 64]. The United States responsively contends the FCIC owed plaintiff no duty of care. [Doc. 16 at 7].

Whether a duty exists is a threshold legal question for the court. <u>McGehee v. Forest Oil Corp.</u>, 908 F.3d 619, 624-25 (10th Cir. 2018) (applying Oklahoma law). Under Oklahoma law, a duty arises only if the defendant "knew or should have known of some danger harm" such that a reasonably prudent person would view the conduct as unreasonably dangerous." <u>Id</u>. at 628 (*quoting* <u>Lowery v. Echostar Satellite Corp.</u>, 2007 OK 38, ¶ 15, 160 P.3d 959, 965). Foreseeability alone does not establish duty; the risk must place the plaintiff within the "zone of risk" created by the defendant's conduct. <u>Id</u>. at 626.

Plaintiff has not shown that the FCIC's actions placed him within that zone.

---

private parties," and explaining the "'like circumstances' inquiry requires only that the United States be analogized to a similarly situated private party").

The FCIC increased subsidies and extended premium due dates for participants in the LRP pilot program. Plaintiff was neither a purchaser nor a potential purchaser of LRP insurance, nor otherwise associated with the program. He was an unknown market maker on the CME Feeder Cattle Index, and nothing in the complaint indicates that FCIC knew of his existence or trading activities. More importantly, plaintiff identifies no Oklahoma precedent imposing liability on a private insurer or analogous entity for adjusting program subsidies or payment terms in a manner that indirectly affects a third party's market activity. Without such precedent, plaintiff cannot satisfy the FTCA's requirement that the United States be liable "in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). Because the alleged risks did not render FCIC's conduct unreasonably dangerous to plaintiff, no duty of care existed. Without such a duty, plaintiff cannot establish a private-party analogue, and the United States is entitled to Rule 12(b)(1) dismissal of his first cause of action.

D. PLAINTIFF'S NEGLIGENCE *PER SE* CLAIM FAILS AS A MATTER OF LAW.

In Oklahoma, a negligence *per se* claim requires satisfaction of three elements: (1) the injury must have been caused by the violation; (2) the injury must be of a type intended to be prevented by the statute; and (3) the injured party must be a member of the class intended to be protected by the statute." MeGee v. El Patio, LLC, 2023 OK 14, ¶ 9, 524 P.3d 1283, 1286. Plaintiff relies on 71 *Okla. Stat*. ("O.S.") § 1-501, titled "General Fraud," as the analogous state law duty that supports his claim for negligence *per se*. [Doc. 15 at 29-30, ¶ 81]. Section 1-501 makes it "unlawful for a

person, in connection with the offer, sale, or purchase of a *security*, directly or indirectly:

1. To employ a device, scheme or artifice to defraud;
2. To make an untrue statement of a material fact or to omit to state a material fact necessary in order to make the statement made, in light of the circumstances under which it is made, not misleading; or
3. To engage in an act, practice, or course of business that operates or would operate as a fraud or deceit upon another person."

71 O.S. § 1-501 (emphasis added).

The United States correctly states that the FCIC's challenged decision cannot be independently tortuous under § 1-501. [Doc. 16 at 9]. The term "security" in § 1-501 is defined at 71 O.S. § 1-102(32) and does not include an insurance policy such as those issued under the LRP pilot program. Even if § 1-501 were applicable, plaintiff alleges no facts showing that the FCIC engaged in a fraudulent scheme, made a material misrepresentation or omission, or otherwise acted deceitfully. *See* Id. § 1-501(1)-(3). Nor has plaintiff identified any Oklahoma case law recognizing negligence *per se* liability based on actions comparable to the FCIC's administration of a subsidy program. Because negligence *per se* requires a qualifying statutory duty, a violation of that duty, and causation, plaintiff's claim fails on multiple elements. Absent an analogous state-law duty, the FTCA provides no waiver of sovereign immunity, and the United States is entitled to Rule 12(b)(1) dismissal of plaintiff's second cause of action.

## IV. CONCLUSION

WHEREFORE, the United States' motion to dismiss [Doc. 11] is hereby **GRANTED**.

IT IS SO ORDERED on this 20th day of August, 2025.

_____
JASON A. ROBERTSON
UNITED STATES MAGISTRATE JUDGE